UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| EDGAR TATUM,<br>*Plaintiff*,<br><br>v.<br><br>IVAN LADD-SMITH,<br>*Defendant*. | No. 3:18-cv-01103 (VAB) |

**INITIAL REVIEW ORDER**

Edgar Tatum ("Mr. Tatum"), currently incarcerated at MacDougall-Walker Correctional Institution in Suffield, Connecticut, and proceeding *pro se*, has sued Ivan Ladd-Smith under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), which permits suits against federal employees for violations of federal constitutional rights. Mr. Tatum alleges that Mr. Ladd-Smith ("Mr. Ladd-Smith") has deprived him of his right of access to the courts.

For the reasons that follow, the Complaint is **DISMISSED** under 28 U.S.C. § 1915A.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mr. Ivan Ladd-Smith works for the Honorable Warren W. Eginton, Senior United States District Judge in the District of Connecticut. Mr. Tatum alleges that Mr. Ladd-Smith interfered with Mr. Tatum's access to the courts by failing to mail Mr. Tatum a copy of a ruling Mr. Ladd-Smith entered on the Court's docket.

On February 13, 2015, the Second Circuit Court of Appeals issued a mandate ordering that Mr. Tatum's motion for leave to file a second or successive habeas petition be transferred to

1

the District of Connecticut.[1] On May 5, 2015, Judge Eginton issued an order to show cause, directing Mr. Tatum to file a response addressing whether the limitations period on his state habeas petition should be equitably tolled based on two date stamps that preceded the filing date on the state court docket. Mr. Ladd-Smith docketed the order in the matter of *Tatum v. Murphy*, No. 3:12-cv-01193 (WWE).

On June 10, 2015, recognizing that Judge Eginton had already once denied Mr. Tatum's state habeas petition as untimely in *Tatum v. Murphy*, No. 3:12-cv-01193 (WWE), the Honorable Vanessa L. Bryant, United States District Judge in the District of Connecticut, entered an order transferring Mr. Tatum's case to the Second Circuit to determine whether Mr. Tatum should be permitted to file a second or successive habeas case.[2] Although Mr. Tatum alleges that this order was entered in *Tatum v. Murphy*, a review of court records shows that the Order was entered in *Tatum v. Chapdelaine*, No. 3:15-cv-00330 (VLB).

On July 20, 2015, in *Tatum v. Murphy*, Judge Eginton determined Mr. Tatum's habeas petition was untimely and declined to reopen the case. On July 20, 2015, Judge Eginton denied Mr. Tatum's motion for reconsideration. Mr. Tatum alleges that the Court never responded to Mr. Tatum's response to the Court's Order to show cause.

---

[1] The Court takes judicial notice of the docket sheet in *Tatum v. Murphy*, No. 3:12-cv-01193 (WWE). *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (noting that a court may consider documents "incorporated by reference" or when a complaint "relies heavily upon its terms and effect," which render the document "integral" to the complaint (citation omitted)); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) (noting that a court may rely on "matters of public record" in deciding a motion to dismiss under Rule 12(b)(6)).

[2] *Id.*

In February 2016, Mr. Tatum allegedly filed a grievance against Assistant Connecticut State Attorney General Tammara Grosso, alleging negligence.[3] The Grievance Panel allegedly sent Mr. Tatum a copy of Judge Eginton's July 8, 2015, Order dismissing his habeas petition as time-barred, a ruling docketed by Mr. Ladd-Smith.

Mr. Tatum allegedly wrote to the District of Connecticut about not receiving the ruling and allegedly received no response. Mr. Tatum then filed an appeal with the Second Circuit explaining his reasons for the delay in filing. The Court of Appeals allegedly dismissed the appeal as untimely. Mr. Tatum sought reconsideration *en banc*, which was denied.

Mr. Tatum then filed this lawsuit alleging that Mr. Ladd-Smith has deprived him of his right to access the courts. *See Morello v. James*, 810 F.2d 344, 346 (2d Cir. 1987) (recognizing sources of the right of access to include the First, Fifth, and Fourteenth Amendments, and the Privileges and Immunities Clause of Article IV, section 2). He seeks injunctive relief, money damages, and attorney fees and costs.

## II.     STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, the Court must review prisoner civil complaints against governmental actors and "dismiss . . . any portion of the complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* In reviewing a *pro se* complaint, the Court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

---

[3] Mr. Tatum has not indicated to which governing body he made this complaint.

8(a)(2). Although detailed allegations are not required, the complaint must include sufficient facts to afford a defendant fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

## III. DISCUSSION

Mr. Tatum alleges a *Bivens* claim and the Court must assess whether this claim has already been established, or whether it would require an expansion of the remedy. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1864 (2017); *Sanford v. Bruno*, No. 17-cv-5132 (BMC), 2018 WL 2198759, at *5 (E.D.N.Y. May 14, 2018) (noting the two step test and that "[f]irst, the court must determine whether a plaintiff's claims arise in a new *Bivens* context"). As discussed below, this review warrants the dismissal of this lawsuit.

In *Bivens*, the Supreme Court recognized an implied private cause of action for individuals harmed by federal officers. *See Bivens*, 403 U.S. at 397 (recognizing that the Court has "no explicit congressional declaration that persons injured by a federal officer's violation of the Fourth Amendment may not recover money damages from the agents, but must instead be remitted to another remedy, equally effective in the view of Congress"); *see also Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001) (noting in *Bivens* that the Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights").

The *Bivens* case involved a search and seizure by the then-Federal Bureau of Narcotics, and the Supreme Court held a plaintiff could pursue "a cause of action for damages" implied

4

directly from the Fourth Amendment. *Bivens*, 403 U.S. at 388. Immediately following *Bivens*, the Supreme Court expanded the remedy to two new contexts: claims challenging sex discrimination under the Fifth Amendment's Due Process Clause, *Davis v. Passman*, 442 U.S. 228, 244 (1979), and claims arising from the Eighth Amendment's Cruel and Unusual Punishments Clause. *Carlson v. Green*, 446 U.S. 14 (1980).

After *Carlson*, however, the Supreme Court "has consistently refused to extend *Bivens* liability to any new context or new category of defendants." *Malesko*, 534 U.S. at 68 (declining to recognize *Bivens* remedy for Eighth Amendment violations against private prison operator under color of federal law); *see also Bush v. Lucas*, 462 U.S. 367, 368 (1983) (declining to "authorize a new nonstatutory damages remedy for federal employees whose First Amendment rights are violated by their superiors"); *United States v. Stanley*, 483 U.S. 669, 684 (1987) ("We hold that no *Bivens* remedy is available for injuries that arise out of or are in the course of activity incident to service" for service members pursuing substantive due process claim against military officers); *Schweiker v. Chilicky*, 487 U.S. 412 (1988) (declining to recognize an implied cause of action for due process violations allegedly committed by government officials administering Social Security disability benefits); *Minneci v. Pollard*, 565 U.S. 118, 131 (2012) (declining to recognize implied cause of action under the Eighth Amendment against "privately employed personnel working at a privately operated federal prison").

Most recently, in *Ziglar*, the Supreme Court further delineated how courts should address an individual claim and whether, for the purposes of *Bivens*, it offered an expansion of the remedy or an application of a prior-recognized claim. *See Ziglar*, 137 S. Ct. at 1859–60 (declining to recognize *Bivens* claims "challenging the conditions of confinement imposed on

5

respondents pursuant to the formal policy adopted by the Executive Officials in the wake of the September 11 attacks"). The Supreme Court held that:

> The proper test for determining whether a case presents a new *Bivens* context is as follows. If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new. Without endeavoring to create an exhaustive list of differences that are meaningful enough to make a given context a new one, some examples might prove instructive. A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1860. In applying that test, the Supreme Court focused on the factual context of the claim, noting that the specific claims "bear little resemblance to the three *Bivens* claims" previously recognized. *Id.*[4] The claims therefore were in a new *Bivens* context and "special factors" counseled against recognizing a cause of action in that context. *Id.*

Mr. Tatum's claim bears no resemblance to the three recognized *Bivens* claims. He alleges that Mr. Ladd-Smith failed to mail him a copy of a ruling Mr. Ladd-Smith entered on the Court's docket, thus depriving him of access to the courts. That claim differs fundamentally from the claim in *Davis*. *Davis* recognized a sex discrimination claim under the Fifth Amendment—"a claim against a Congressman for firing his female secretary," *Ziglar*, 137 S. Ct. at 1860—and did not entail the alleged misconduct by an employee of a federal court or the type of allegation at issue here. Neither does Mr. Tatum's claim resemble a claim of an unlawful search and seizure

---

[4] These three claims were described in a fact-bound manner, as a "claim against FBI agents for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary; and a claim against prison officials for failure to treat an inmate's asthma." *Id*; *see also Sanford v. Bruno*, No. 17-cv-5132 (BMC), 2018 WL 2198759, at *4 (E.D.N.Y. May 14, 2018) ("*Ziglar* also made it clear that the *only* recognized implied rights of action are the narrow situations presented in *Bivens*, *Davi*s, and *Carlson*").

6

under the Fourth Amendment or a claim arising under the Eighth Amendment. *See Sanford*, 2018 WL 2198759, at *4 ("*Ziglar* also made it clear that the *only* recognized implied rights of action are the narrow situations presented in *Bivens*, *Davis*, and *Carlson*").

Recognizing a *Bivens* claim in this case therefore would require the Court to "extend *Bivens* liability to [a] new context or new category of defendants." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). And, because "the recognition of a cause of action is context-specific," this Court must turn to the second step of the inquiry: whether it should recognize a "new and freestanding remedy in damages" within this new context. *Sanford*, 2018 WL 2198759, at *5.

The Supreme Court has "made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Ziglar*, 137 S. Ct. at 1857. The Court may weigh several different factors in deciding whether to expand the remedy. It would be inappropriate, for example, to recognize a *Bivens* remedy in a new context where "special factors counselling hesitation in the absence of affirmative action by Congress." *Id.* A second consideration is whether "other alternative forms of judicial relief" are available. *Id.* at 1863 (quoting *Minneci v. Pollard*, 565 U.S. 118, 124 (2012)).

The Supreme Court instructed that "special factors counselling hesitation" means that the "inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1857–58. This would require an analyses of "its impact on government operations systemwide." *Id.* at 1858. That analysis includes "the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself when the tort and monetary liability mechanisms of the legal system are used to bring about the proper formulation and implementation of public policies." *Id.* These

7

considerations make it less likely that Congress would want courts to allow damage suits to move forward against government employees in new contexts. *Id.*

Considering the "impact on government operations systemwide," the Court declines to expand the *Bivens* remedial scheme to address Mr. Tatum's claims. In the first instance, to prevail under *Bivens*, Mr. Tatum must have alleged "deliberate abuse of governmental power," and he has not. *Schweiker*, 487 U.S. at 447 (Brennan, J. dissenting) (citing *Daniels v. Williams*, 474 U.S. 327, 328 (1986)). The requirement is designed to shield government officials from liability for their "legitimate" conduct. *Id.*

In any event, if it was the case that Mr. Tatum's suit was cognizable under *Bivens*, and it is not, he would still have to overcome immunity, whether qualified or absolute. And the policy goals underlying absolute immunity militate in favor of finding that the harm about which Mr. Tatum is aggrieved is best left for Congress to address. *See Pierson v. Ray*, 386 U.S. 547, 554 (1967) ("[A judge's] errors may be corrected on appeal, but [a judge] should not have to fear that unsatisfied litigants may hound [the judge] with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decisionmaking but to intimidation").[5]

---

[5] Even if Mr. Tatum had a viable *Bivens* claim, to prevail, he would have to overcome the defense of absolute immunity, because Mr. Ladd-Smith is judicial staff. Judges are granted absolute immunity, which "benefit[s] the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." *Oliva v. Heller*, 839 F.2d 37, 39 (2d Cir. 1988) (quoting *Pierson v. Ray*, 386 U.S. 554). When determining which persons are covered by an extension of absolute immunity, the Supreme Court looks to the "nature of the responsibilities of the individual officers," "not from rank or title or 'location within the Government.'" *Id.* Where a prisoner plaintiff sued a judicial law clerk, the Second Circuit found that the law clerk's duties and responsibilities were "most intimately connected with the judge's own exercise of the judicial function," and concluded that "for purposes of absolute judicial immunity, judges and their law clerks are as one." *Id.* at 40; *see also McKeown v. N.Y. State Comm'n on Judicial Conduct*, 377 Fed. App'x 121, 124 (2d Cir. 2010) ("Prosecutors, hearing examiners, and law clerks are eligible for absolute immunity . . . ").

Mr. Tatum has failed to state a plausible claim that Mr. Ladd-Smith violated his constitutional rights under *Bivens*. This lawsuit therefore must be dismissed.

## IV. CONCLUSION

For the reasons discussed above, Complaint is **DISMISSED** under 28 U.S.C. § 1915A(b)(1).

An appeal *in forma pauperis* from this Order would not be taken in good faith.[6]

The Clerk of the Court is instructed to enter judgment in favor of Mr. Ladd-Smith and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this XXth day of October, 2018.

      /s/ Victor A. Bolden
      VICTOR A. BOLDEN
      UNITED STATES DISTRICT JUDGE

---

The very nature of Mr. Tatum's claim, that Mr. Ladd-Smith allegedly failed to do something he was supposedly required to do as judicial staff to Judge Eginton, suggests that absolute immunity would also result in this case's dismissal.

[6] An appeal may not be taken *in forma pauperis* if the Court certifies that an appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3). The Second Circuit has instructed:

> [A]n application for leave to appeal in forma pauperis will have sufficient substance to warrant consideration only if, in addition to an adequate showing of indigence and of citizenship, it identifies with reasonable particularity the claimed errors which will be the basis for the appeal. If these requirements are satisfied, and if on consideration the trial judge is conscientiously convinced that there is no substantial question for review and that an appeal would be futile, or if he is convinced that there is no reasonable basis for the claims of alleged error, it is the duty of the trial judge, albeit not a pleasant duty, to certify that the appeal is not taken in good faith.

*United States v. Farley*, 238 F.2d 575, 576 (2d Cir. 1956) (internal citations and quotation marks omitted).